UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>DEON EDWARD LOPEZ and<br>JAMAR DEWAYNE GREER,<br><br>  Defendants.<br>_____ | ) Case No. CR 06-00466 DDP<br>)<br>) **ORDER GRANTING DEFENDANTS'**<br>) **RECHARACTERIZED MOTION *IN LIMINE***<br>) **TO EXCLUDE EVIDENCE OF MAURO**<br>) **GALINDO'S MURDER**<br>)<br>) [Motion filed on April 28, 2008]<br>)<br>) [Defendant Greer's Joinder filed<br>) on May 20, 2008]<br>)<br>) |

   This matter is before the Court on Defendant Deon Edward Lopez's Motion to Strike Overt Acts 27, 28, and 33 Through 59 of the Indictment. Those overt acts relate to the murder of Mauro Galindo, who was an alleged drug supplier to Lopez and his co-defendant Duane Palm. After reviewing the papers submitted by the parties and considering the arguments therein, the Court finds that Lopez's motion is more appropriately characterized as a motion *in limine* to exclude evidence regarding Mauro Galindo's murder. At the hearing on this motion, counsel for both Defendants agreed to

the recharacterization of this motion as a motion *in limine*. The Court is inclined to grant the motion.[1]

## I.   BACKGROUND

On June 8, 2006, Defendant Lopez was charged along with co-defendants of conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine (count one), and possession with intent to distribute 14 kilograms of cocaine (count two). Lopez was also charged with using and carrying a firearm during and in relation to the conspiracy (count three). Lopez was not charged in connection with the other counts in the indictment.

On March 7, 2005, Lopez was arrested in connection with a drug transaction. The Government learned that Duane Palm, one of Lopez's former co-defendants who now faces murder and drug charges in state court, was going to participate in a drug transaction on that date. After observing Lopez and Palm engage in suspicious activity, police stopped Lopez's vehicle and arrested him. Palm led police on a high-speed chase and tossed packages from the vehicle, which were later recovered and turned out to be cocaine.

The Government has alleged that Lopez and Palm obtained the cocaine from Mauro Galindo. Although police seized the cocaine during the March 7, 2005 stop, Palm told Galindo that the cocaine was delivered outside of California and that Galindo would receive payment from the sale. (25, 26). Palm told another person that he owed Galindo a substantial amount of money and did not know what to

---

[1] There is no prejudice to the alleged overt acts remaining in the indictment because the jury will not be read the indictment in this case. At trial, the Court will allow a joint statement of the case to be read to the jury.

do about it.  On March 31, 2005, Palm told Galindo that he would soon receive the money for the cocaine.  Thereafter, Galindo was murdered and his wife was shot.  The Government contends that Palm and other coconspirators committed the murder to avoid having to pay Galindo for the cocaine.

Count one of the indictment, charging conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine, alleges a number of overt acts.  Acts 1 through 20 relate to the March 7, 2005 drug transaction in which Lopez is alleged to have participated.  Acts 21 through 59 relate to Galindo's murder.

Here, Lopez moves to strike overt acts 27, 28, and 33 through 59 of the indictment which relate to Galindo's murder.  Lopez also requests an evidentiary hearing pursuant to Federal Rule of Evidence 104 with respect to the admissibility against Lopez of coconspirator statements related to Galindo's murder.

**II.  DISCUSSION**

Here, the indictment charges Lopez with conspiracies to distribute and possess with intent to distribute cocaine.  There is no charge of conspiracy to commit murder.  Galindo's murder, or the planning related to the murder, are largely irrelevant to the conspiracies charged in the indictment.  See Fed. R. Evid. 401 (defining relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence").  Even if evidence of the murder were relevant, it is only marginally so and it is highly prejudicial to the defendant.  See Fed. R. Evid. 403 (stating that

3

relevant evidence may be inadmissible when "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury"). Accordingly, the Court is inclined to exclude evidence of Galindo's murder as irrelevant and prejudicial.

The elements of a conspiracy are: "1) an agreement to accomplish an illegal objective, 2) coupled with one or more acts in furtherance of the illegal purpose, and 3) the requisite intent necessary to commit the underlying substantive offense." United States v. Pemberton, 853 F.2d 730, 733 (9th Cir. 1988). The conspiracy charges in this case allege an agreement to possess and sell drugs. By all accounts, Galindo was considered a part of that conspiracy at least until he was murdered. This casts serious doubt on viewing Galindo's murder as an object of the conspiracy. First, it would be inconsistent for a member of the conspiracy - here Galindo - to conspire with others to have oneself killed. Second, rather than being in the furtherance of illegal drug transactions, it would seem that killing one's supplier is actually inimical to the agreed-upon purpose of selling drugs because it eliminates a source of supply.

The overt acts alleged in the indictment suggest the existence of two conspiracies with different objectives, one to sell drugs and one to murder Galindo. The existence of a single conspiracy asks "whether there was one overall agreement among the various parties to perform various functions in order to carry out the objectives of the conspiracy." United States v. Gordon, 844 F.2d 1397, 1401 (9th Cir. 1988) (citations omitted). The facts here indicate first an agreement to possess and distribute drugs that

4

included Galindo and a later agreement among some of the same coconspirators to murder Galindo. That Palm and other coconspirators decided to turn on Galindo and kill him to avoid paying for the cocaine certainly suggests an agreement to commit murder and could support a charge of conspiracy to commit murder, but that agreement seems to be distinct from the drug-related conspiracy. The murder is simply outside the scope of the original drug-related conspiracy.

Notably, the Government recognizes that the object of the drug-related conspiracy did not include murder. As the Government states in setting forth the basis for the conspiracy charge: "Count One of the indictment charges a single conspiracy with two objects, namely to distribute cocaine and to possess with intent to distribute cocaine." (Opp'n 1.) Nevertheless, the Government contends that Galindo's murder is relevant because it resulted from the March 7, 2005 drug transaction in which Lopez was involved. Moreover, the Government asserts that Galindo's murder is relevant to show the violent nature of the conspiracy. The Court does not find the Government's reasoning persuasive.

While the alleged facts suggest that Palm considered killing Galindo to avoid repaying him for the cocaine seized on March 7, 2005, any agreement to kill Galindo does not serve to prove the elements of a conspiracy to distribute and possess with intent to distribute cocaine. The Government's argument has it backwards. The murder is not relevant to proof of the drug-related conspiracy; rather, the failed March 7, 2005 drug transaction could be relevant to Palm and other coconspirators' agreement to murder Galindo and to explaining their intent and motive to kill.

5

1    Even if the murder were marginally relevant to the drug-
2 related conspiracy at a broad level of generality, for where
3 agreements are made to participate in drug deals murders sometimes
4 follow close behind, the evidence of Galindo's murder is highly
5 prejudicial to Lopez.  The facts alleged in the indictment point to
6 Lopez's involvement in the March 7, 2005 drug transaction.
7 Otherwise, there is no indication that Lopez even participated in
8 alleged acts related to the murder of Galindo.  As the indictment
9 relates to Lopez, the focus is the March 7, 2005 transaction.
10 Galindo's murder has little if any probative value with respect to
11 the agreement to pursue the illegal drug transactions, nor does it
12 explain Lopez's state of mind with respect to participating in the
13 alleged conspiracy.  Yet the evidence of Galindo's murder is highly
14 inflammatory and presents a substantial risk of prejudice to Lopez.
15 Accordingly, the Court finds that evidence of Galindo's murder is
16 inadmissible because its low probative value is substantially
17 outweighed by the risk of unfair prejudice.
18    For the reasons stated, the evidence of Galindo's murder
19 appears irrelevant to the drug-related crimes that are charged and
20 is highly prejudicial.  Therefore, statements related to the murder
21 are also irrelevant to proof of the drug-related conspiracy and
22 prejudicial to the defendant.  Additionally, as the statements
23 related to the murder were not made "in the furtherance of the drug
24 conspiracy," those statements are inadmissible hearsay.  See Fed.
25 R. Evid. 801(d)(2)(E).
26 ///
27 ///
28 ///

**III. CONCLUSION**

For the foregoing reasons, the Court is inclined to GRANT the recharacterized motion *in limine* to exclude evidence related to Galindo's murder. By ultimately agreeing at the hearing on this motion to converting it to a motion *in limine*, Defendants agreed that they too would be excluded from offering evidence of the murder. This means neither the Government nor Defendants may admit evidence of Galindo's murder at trial.

IT IS SO ORDERED.

Dated: June 5, 2008

_____
DEAN D. PREGERSON
United States District Judge